**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IN RE DINO ROTONDO

Case No. 16-13324

_____/

**OPINION AND ORDER DENYING ASSIGNOR'S MOTION TO DISMISS**

Assignor Dino Rotondo filed this action for an Assignment for the Benefit of his

Creditors ("ABC") in Michigan state court. Creditors Akouri Investments LLC and

Internal Revenue Service ("the Government" or "IRS") joined the action. In September

2016, the Government removed the case to this court without objection. (Dkt. # 1.) Now,

after the court and the parties have invested two years in resolving Assignor's debts,

Assignor has filed a motion to dismiss asserting that the court lacks subject-matter

jurisdiction over this case. (Dkt. # 41.) The Government and Akouri filed responses in

opposition to the motion (Dkt. # 42, 43) and Assignor filed a reply. (Dkt. # 44.) The court

having considered the parties' briefing concludes a hearing is unnecessary and will

deny the motion.

**I. BACKGROUND**

In August 2016, Dino Rotondo executed an agreement assigning all of his assets

to Frank Simon ("Assignee") for the Benefit of Rotondo's Creditors. Assignee then filed

a complaint for Offer of Assignment for the Benefit of Creditors ("ABC") action[1] in

---

[1] An ABC is essentially the state law equivalent of a bankruptcy proceeding.

Michigan state court. *See* Mich. Comp Laws § 600.5201. Assignee determined that

Rotondo owed tax liabilities to the Government and several other creditors. Creditor IRS

removed the action to this court based on 28 U.S.C. § 1442(a)(1), which provides that

the United States may remove actions brought "against or directed to the United States

or any agency thereof" to federal court. (*See also* Dkt. # 1, Pg. ID 2.)

Assignee received proof of claims regarding Rotondo's debts, which total over

eight million dollars including approximately five million dollars owed to the IRS and

nearly a million and a half owed to Creditor Akouri.  (Dkt. # 17, Pg. ID 299.) Assignee

explained,

> The objective of the ABC is to collect the income of Rotondo and apply it
> towards his daily reasonable living expenses and apply any remainder to
> his creditors under the priorities set forth in the [ABC] Statute.

(Dkt. # 7, Pg. ID 89.) Pursuant to the assignment, Rotondo's current and future income

as well as his other assets were to be transferred to Assignee for management and

distribution. Assignee filed a report with the court estimating Rotondo's assets and his

outstanding liabilities and budgeting for his reasonable monthly expenses. (Dkt. # 17,

Pg. ID 299.)

The court held a hearing on April 19, 2017 regarding motions to approve the

Assignee's first and second reports. At the hearing, the Creditors raised questions

regarding the expenses included in the proposed monthly budget. For example, they

questioned why Rotondo needed a monthly allowance of $679.49 for electric energy

services, a $700.55 allowance for phone services, or a $310.52 allowance for cable

services. (Dkt. # 17, Pg. ID 299.) The court agreed that the proposed expenses

required additional supporting information. (Dkt. # 24.)

Consequently, Assignee prepared documentation along the lines of a Bankruptcy Schedule J, known as "the accounting," to supply additional information. (Dkt. # 25, Pg. ID 456.) Thereafter, the parties attended facilitation with retired Bankruptcy Judge Steven Rhodes.

At a status conference held on September 25, 2017, the parties informed the court that they had attended facilitation with Judge Rhodes, but they were still unsuccessful in reaching a resolution regarding Assignee's proposed monthly budget for a number of reasons. Among said reasons was that the new accounting provided by Assignee created more questions than answers. Specifically, the accounting failed to provide adequate documentation of Assignor Rotondo's income and expenses and it showed that Rotondo had not paid any of his income to Assignee for at least five months.

Rotondo explained that the discrepancies regarding his income were attributable to his departure from his job at the Sussman Agency. Previously, Rotondo was an employee of the Sussman Agency and his income was directly given to Assignee; however, Rotondo recently formed D 360 LLC to provide independent contractor services to the Sussman Agency. As such, Rotondo is no longer an employee of the Sussman Agency. The Agency now contracts with and pays D 360 LLC for consulting services directly. In sum, the salary previously paid to Rotondo for his consulting services as an employee is now paid to D 360 LLC for its consulting services as an independent contractor, services which are presumably still performed by Rotondo—D 360 LLC's resident agent. (Dkt. # 20-1, Pg. ID 408.)

Creditors Akouri and the Government expressed concern regarding their ability to negotiate an Assignment for the Benefit of Creditors Monthly Budget without an accounting of Rotondo's estimated filings with the IRS and financial records from D 360 LLC.

Around this time, Assignor Rotondo indicated that he may seek dismissal of the case since efforts to establish a budget had not been fruitful. The Creditors objected arguing that Assignor should not be able to voluntarily dismiss the case considering that he had reaped benefits under the Michigan ABC statute such as having all of his creditors stayed for the past thirteen months and not being required to file taxes.

In an effort to resolve the parties' dispute over the budget, the court ordered Assignor Rotondo to provide an updated accounting, which he subsequently did. (Dkt. # 33.) Unfortunately, the updated accounting raised even more questions concerning his income, expenses, and overall finances. Notably several checks were written to Assignor Rotondo's wife, Karen Newman, and to a company entitled Lifestyle Lift, which has some relation to Allen Sussman and Richard Mark of the Sussman Agency. Additionally, like her husband, Karen Newman left her job at the Sussman Agency and was hired by D 360 LLC. She is now paid out of the assets owned by the newly formed D 360 LLC, assets that presumably include funds paid by the Sussman Agency for consulting services performed by Rotondo.

Following a telephonic status conference before the court on January 11, 2018, the court concluded that targeted discovery would be necessary to resolve these questions and in turn, develop an accurate monthly budget. The court ordered the parties to meet and confer regarding limited discovery of this nature. Despite substantial

discussions, the parties were unable to reach an agreement concerning the proper scope of inquiry for the depositions of Karen Newman, Alan Sussman, and Richard Mark.

Assignor suggested a narrow scope of inquiry for the depositions—allowing only questions related to Karen Newman's compensation from D 360 LLC and the Lifestyle Lift transaction. The Creditors argued that the depositions should encompass related issues such as Ms. Newman's background, experience, and qualifications for her D 360 LLC employment and her prior employment with the Sussman Agency as well as the purported business expenses of the newly formed D 360 LLC and Rotondo's employment with the Sussman Agency during the pendency of this action.

After considering the parties' positions, and the suspicious timing and nature of Assignor Rotondo's formation of D 360 LLC, his and his wife's uniform changes in employment, as well as Rotondo's unexplained financial transactions, the court indicated that it was inclined to order targeted and limited discovery akin to that suggested by the Creditors. Shortly thereafter, Assignor filed the present motion to dismiss for lack of subject-matter jurisdiction.

## II. STANDARD

"As courts of limited jurisdiction, federal courts may exercise only those powers authorized by the Constitution and statute." *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001). Title 28 U.S.C. § 1331 provides, that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Additionally, Federal law allows this court to exercise jurisdiction over an action brought against or directed to a federal agency:

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C.A. § 1442 (a)(1).

Federal courts have an initial and continuing obligation to examine whether they have subject-matter jurisdiction over an action, and may raise the issue sua sponte. *See, e.g., Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *Arbaugh v Y&H Corp.*, 546 U.S. 500, 506 (2006); *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998). When a lawsuit is removed from state court, federal courts have an obligation to examine whether subject-matter jurisdiction exists. *E.g., Nowicki-Hockey v. Bank of America, N.A.*, 593 Fed. Appx. 420, 421 (6th Cir. 2014); *Williamson v. Aetna Life Ins.*, 481 F.3d 369, 375 (6th Cir. 2007) ("Jurisdiction is determined at the time of removal.").

A defendant may remove a civil action filed in state court to a federal district court when the federal district court would have original jurisdiction. 28 U.S.C. § 1441(a). The removing party bears the burden of establishing that the federal courts have subject-matter jurisdiction. *Nowicki-Hockey,* 593 Fed. Appx. at 421.

### III. DISCUSSION

The Government contends that this court has jurisdiction over this action both because is a civil action commenced in state court against or directed to the IRS and because it concerns a question of federal law.

**A. The IRS's removal was authorized by the unambiguous language of the removal statute**

The removal statute allows a federal agency to remove to federal court a "civil action" that is "commenced in a State court and that is against or directed to" it. 28 U.S.C.A. § 1442(a)(1). The statute defines civil action broadly:

> (d) In this section, the following definitions apply:
>
> (1) The terms "civil action" and "criminal prosecution" include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued.

28 U.S.C.A. § 1442(d)(1). A judicial order approving an Assignment for the Benefit of the Creditors is sought in this proceeding. Therefore, it fits within the removal statute's scope as a "civil action."

The next question before the court, and the one the parties largely dispute, is whether this ABC action is "against or directed to" an agency of the United States, namely the IRS. The parties present several arguments, none of which address the context in which the phrase "directed to" is used in the statute. The full clause requires that the civil action at issue be "directed to any of the following: . . . the United States or any agency thereof . . . *on account of* any right, title or authority claimed under any Act of Congress for . . . the collection of revenue." 28 U.S.C.A. § 1442(a). The word "directed" when used as verb with an object means to "aim something in a particular direction or at a particular person." *See e.g.*, Cambridge Dictionary (2018); Macmillan English Dictionary (2018). The phrase "on account of" means "because of," and it provides context for the "directed to" requirement. *See e.g.*, Cambridge Dictionary (2018); Macmillan English Dictionary (2018). Specifically, as is relevant here, the statute

allows removal to federal court when a civil action is aimed at a federal agency because of its authority to collect revenue under a federal statute.

In filing this civil action, Assignee served the IRS with the complaint and summons and directed the IRS to file a proof of claim with the Assignee within 90 days in accordance with the Michigan ABC statute, Mich. Comp. Laws § 600.5221. (Dkt. # 1, Pg. ID 29-30.) Assignee represented to the court that "in light of" Rotondo's "significant liabilities owed to a number of creditors including the Internal Revenue Service" Rotondo "determined that it was in his best interest to commence this Assignment" and thereby "avoid numerous creditors in multiple proceedings attempting to seize his assets" (Dkt. # 1, Pg. ID 35.) The phrase "in light of" means "because of." *See e.g.*, Cambridge Dictionary (2018); Macmillan English Dictionary (2018). In other words, Rotondo commenced this civil action and aimed it at the IRS because of the taxes he owed to the IRS pursuant to its authority to collect revenue under a federal statute and to avoid the IRS's attempts to seize his assets also pursuant to its authority to collect revenue under a federal statute.

On these facts alone, the court concludes that this ABC action was commenced in state court and was directed to the IRS on account of its right and authority to claim tax liens against Rotondo's assets under federal law providing for the collection of revenue. *See* 28 U.S.C.A. § 1442(a) (establishing that a federal agency may remove to federal court "[a] civil action . . . that is commenced in a State court and that is against or directed to . . . the United States or any agency thereof . . . on account of any right, title or authority claimed under any Act of Congress for . . . the collection of revenue.").

However, the conclusion that this action is directed to the IRS is confirmed by a review of the substance of the action.

**B. The IRS's removal was proper because this ABC action was directed to it**

When an ABC action is initiated under Michigan law, a trust is formed containing all of the assignor's nonexempt assets and the assignee is appointed trustee for the benefit of the creditors of the assignor. Mich. Comp. Laws § 600.5205. "The common wisdom is that the assignee owes duties primarily to the creditors because of the fiduciary nature of [his] role." A State-by-State Guide to Assignments for the Benefit of Creditors, Strat. Alt. Dis. Bus. § 28:3 Michigan: Overseeing the process (2018). Once the assignment occurs, the assignor's assets are insulated from liens, attachments, or other collection actions. Mich. Comp. Laws § 600.5201(3).

The assignee is required to provide "notice [of the ABC action] to all creditors personally or by mail." Mich. Comp. Laws § 600.5221. The creditors of the assignor are then required "to prove their claims within 90 days thereafter by a proof of claim to be filed with the assignee." *Id.* The statue prevents the court from allowing any claim against the assignor's assets by any creditor notified of the action if the assignee does not receive proof of the claim from the creditor within one year from the date on which the ABC action was initiated. *Id.* Any creditor may contest a claim filed by another creditor and payment as to any contested claim is stayed until the dispute is resolved by the court. Mich. Comp. Laws § 600.5231.

Once the assignee has collected the assignor's nonexempt assets and identified the assignor's debts, the assignee is required to petition the court for the "power to direct the disposition" of the assignor's assets. Mich. Comp. Laws § 600.5215. The

petition must contain a proposal indicating "the most advantageous method" of

distributing the assignor's assets. *Id.* Following the court's approval of the petition, "[t]he

assigned property and assets shall be sold at public or at private sale, in 1 parcel or

separately, as said court or judge may direct." *Id.* The funds available for distribution are

then paid out in accordance with the assignee's petition and statute's terms. Mich.

Comp. Laws § 600.5251.

> Throughout the course of the ABC action, the court has the authority to
>
> (2) Specific powers. Upon the application of the assignee or of any other interested person the proper circuit court may make all necessary and proper orders for:
>
> (a) the management and disposition of the assigned property;
> (b) the allowance of claims;
> (c) the re-examination of claims;
> (d) the distribution of the assets and avails;
> (e) the recovery of all property claimed by third persons;
> (f) the prevention of any fraudulent transfer or change in the property or effects of the assignor or the allowance or payment of any unjust or fraudulent claims;
> (g) the furnishing from time to time of new bonds or sureties who shall qualify under the court rules, and
> (h) the removal of any assignee for cause and the appointment of a successor to any assignee who dies, resigns, or is removed.

Mich. Comp. Laws § 600.5241. Among other actions, the assignee has the authority to

"Settle all matters . . . between such assignor and his . . . creditors and examine, on

oath to be administered by him, any person touching such matters and accounts." Mich.

Comp. Laws § 600.5211. The very nature and structure of an ABC action under

Michigan law demonstrates that it is *directed to* the assignor's creditors and this

conclusion proves especially true here.

Assignor Rotondo transferred his assets to Assignee Simon who subsequently

filed a complaint for offer of assignment for the benefit of creditors. (Dkt. # 1, Pg. ID 12.)

The complaint states that the assignment to Simon was completed in accordance with Mich. Comp. Laws § 600.5201 and seeks to institute "the liquidation process as contemplated under a Michigan Statutory Assignment for the Benefit of Creditors." (*Id.* at 13.) In accordance with the Michigan ABC statute, a trust consisting of Rotondo's nonexempt assets was formed and Assignee became a trustee owing a fiduciary duty to all of Rotondo's creditors including Creditor IRS. Mich. Comp. Laws § 600.5205. This is the first way that this action is directed to the IRS.

Assignee's complaint identified the IRS as a creditor of Rotondo. (Dkt. # 1, Pg. ID 25.) Assignee served the summons and complaint as well as the proof of claim form on Creditor IRS, (*Id.* at 29-30), thereby triggering the IRS's duty to respond under the Michigan ABC statute or otherwise risk forfeiting its claim. See Mich. Comp. Laws § 600.5221. By forcing the IRS to file proof of its claim and submit to the ABC process, Assignor has brought the IRS "before a tribunal for an immediate tax determination in a legal proceeding of [his] design" rather "than allow the federal government to assess and collect taxes in the manner it deems appropriate." *Compare Bakus v. Bakus*, No. 14-00981, 2015 WL 5031976, at *3 (W.D. Ky. Aug. 25, 2015) (holding that the plaintiff's action under the Kentucky Declaratory Judgment Act, despite not challenging the validity of IRS's tax liens, nonetheless required action from the IRS so as to permit the IRS to assert its sovereign immunity in federal court). Because this action forces the IRS's hand, it could be characterized as not only directed to, but also against the IRS. But at minimum, this is further evidence that this action is directed to the IRS.

Assignee represented to the court that Rotondo "has significant liabilities owed to a number of creditors including the Internal Revenue Service." (Dkt. # 1, Pg. ID 34.)

Assignee explained to the court that Rotondo initiated the ABC action to "avoid numerous creditors in multiple proceedings attempting to seize his assets" (*Id.* at 35), and instead allow claims to be "resolved under the claims reconciliation procedures set forth in the [Michigan] Statute under the auspices of this Court." (*Id.* at 39.) Assignee then requested that "the [state] Court enjoin creditors [including the IRS] from taking any action against any assigned property without first obtaining leave of this court." (*Id.*) This is more evidence that this action is directed to the IRS.

The IRS filed its notice of removal shortly after Assignee's motion to enjoin creditor activity. At the time of removal—which is the time when jurisdiction is determined—the IRS had intervened and asserted federal defenses in this action. The IRS's notice of position following removal and its later pleadings assert its right to sovereign immunity and its ability to raise defenses under the Anti-Injunction Act if necessary to protect its lien priority and/or prevent a stay of its collection activity against Rotondo. (Dkt. # 6, 14.) The IRS's actions indicate that it perceived this action as not only directed to it, but also as potentially against it. They provide further support for the conclusion that this action is directed to the IRS.

Creditor IRS filed an appearance in the state court and in this court. (Dkt. # 3, 6.) It employed counsel to ensure that its interests were adequately represented by Assignee as he develops a plan for dispersal of Rotondo's assets under the court's supervision. A representative for the IRS has been present at the various proceedings throughout the pendency of this action. (Dkt. # 24, 33.)  Assignee has worked directly with the IRS to resolve objections to the monthly budget, orchestrate document disclosure, and effectuate discovery. On June 12, 2017, the parties to this action—

including the IRS—attended a facilitation with Judge Steven Rhodes in an effort to resolve Creditor IRS and Akouri's concerns with the Assignee's accounting of Rotondo's assets and the calculation of his exempt assets. (Dkt. # 30.) The court concludes that this action has been directed to the IRS throughout the nearly two years of proceedings. The court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1442(a)(1).

Instead of engaging the statutory text or considering the substance of a Michigan ABC action, Rotondo presents two arguments in favor of his interpretation of the removal statute—one based on the legislative history of the removal statute and one based on the case caption. Neither are persuasive.

### C. The legislative history of the statute does not support an interpretation contrary to the text

Rotondo emphasizes the legislative history of a 2011 amendment to the removal statute and argues that it demonstrates that when Congress added the phrase "directed to" in the statute they intended it to encompass only pre-suit discovery proceedings against a federal agency. (Dkt. # 41, Pg. ID 740.) While the court sees no reason to sort through various congressional reports to discover the proper interpretation of the removal statute, even if the court were to rely on the statute's legislative history, it would not support Rotondo's position.

The removal statute was first amended in 1996. Congress struck the words, "Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office" and replaced them with "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act

13

under color of such office." *See* Federal Courts Improvement Act of 1996, Pub. Law

104-317 § 206, October 19, 1996, 110 Stat 3847.

In a case interpreting the statute following the 1996 amendment, the Sixth Circuit

conducted a thorough review of the legislative history of the statute and concluded that

the "sued in" clause "applies only to federal officers" meaning that

> The text of § 1442(a)(1), is best read to mean that the three entities that
> can remove are (1) the United States; (2) any agency thereof; or (3) any
> officer of the United States or of any agency thereof, sued in an official or
> individual capacity for any act under color of such office.

*City of Cookeville v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 389

(6th Cir. 2007). The Sixth Circuit concluded that the modifier "sued" did not apply to

"[t]he United States or any agency thereof" because the 1996 amendment "sought to

reverse an earlier Supreme Court decision" which had "permitted only federal officers,

not federal agencies, to remove suits to federal courts" under the removal statute. *City

of Cookeville*, 484 F.3d at 390 (referencing *Int'l Primate Prot. League v. Adm'rs of

Tulane Educ. Fund.*, 500 U.S. 72 at 79–82 (1991)). The court held that the 1996

amendment "effectively added the United States and 'any agency thereof' as parties

that could remove cases to district court." *Id.* (citing S.Rep. No. 104–366, at 31 (1996),

reprinted in 1996 U.S.C.C.A.N. 4202, 4210–11; U.S. Code Cong. & Admin. News 1996,

pp. 4202, 4210 (noting that the amendment "legislatively reverses the Supreme Court's

decision in *International Primate Protection League*")).

Subsequently, as Rotondo notes, Congress amended the removal statute again

in 2011 to add the phrase "directed to"; however, in that same amendment Congress

also removed the word "sued" qualifier altogether, indicating that an action directed to

an officer of the United States in his official capacity need not be a traditional plaintiff-

versus-defendant lawsuit for removal to be proper. *See* Removal Clarification Act of 2011, Pub. Law 112-51, November 9, 2011, 125 Stat 545. The civil action only need be directed to the officer in his official capacity, but not necessarily by suit. The entirety of the changes to the removal statute are depicted below:[2]

> (a) A civil action or criminal prosecution [that is] commenced in a State court [and that is] against [or directed to] any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

> (1) ~~Any officer of~~ The United States or any agency thereof or [any officer] (or any person ~~under him~~ [acting under that officer)] ~~for any act under color of such office~~ [of the United States or of any agency thereof,] ~~sued in~~ in an official or individual capacity, for [or relating to] any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C.A. § 1442(a). While the removal statute's legislative history is not particularly persuasive in any event, a full reading of it and the Sixth Circuit precedent interpreting it supports the Government's removal here.

**D. The case caption is not determinative of the applicability of the statute**

Rotondo next makes an argument based on the case caption—essentially that because the IRS is not a named defendant, it cannot remove this action under the removal statute. Rotondo's understanding does not comport with the text of the statute. Section (a) of the removal statute, concerning civil actions directed to federal agencies, uses the term "them" when dictating who may remove the action: "A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them . . . ." 28 U.S.C. § 1442(a)(1). The

---

[2] Brackets indicate text that was added to the statute and strikethrough indicates text that was removed from the statute.

remaining sections of the removal statute specifically refer to the "defendant" when dictating who may remove the action to federal court. See 28 U.S.C. § 1442(b) and (c). Congress could have made this specification within section (a), but instead used the broader term "them," encompassing "the United State or any agency thereof" regardless of whether they are a defendant or even a named party to the action. 28 U.S.C. § 1442(a)(1).

Rotondo cites a 1991 Supreme Court opinion—*International Primate Protection League*—in support of his interpretation. (Dkt. # 41, Pg. ID 742.) *International Primate Protection League*'s conclusion that the removal authority under the statute is limited to "a defendant" was based on the pre-1996 amendment version of the removal statute. The Court understood the pre-amendment version of the statute to permit "only federal officers, not federal agencies, to remove suits to federal courts." *City of Cookeville*, 484 F.3d at 390. Additionally as explained above, the pre-amendment version of the statute contemplated removal of a civil action only if it was "against" a federal officer "sued in an official or individual capacity." Therefore any reference to "a" or "the defendant" in *International Primate Protection League* is inapposite here where the statute is no longer limited to suits against individuals after the 1996 amendment.[3]

Rotondo also relies upon *Mesa v. California*, 489 U.S. 121, 132 (1989) which held that a federal officer's removal of a state court action pursuant to the removal statute must be predicated on the existence of a federal defense. (Dkt. # 41, Pg. ID 742.) The natural implication being that the removing party must be a defendant,

---

[3] As explained above, the removal statute's legislative history, on which Rotondo relies in his earlier arguments, explicitly states that the reason for the 1996 amendments was to correct *International Primate Protection League*'s interpretation of the statute.

according to Rotondo. *Mesa*, too, was decided before the 1996 and 2011 amendments to the removal statute and thus did not contemplate how the statute would affect federal agencies. In examining this question the Sixth Circuit has posited that "where the United States" is the removing party, the same Article III concerns are not present and a federal defense need not be asserted. *See City of Cookeville*, 484 F.3d at 391. Therefore, *Mesa* lends no support to Rotondo's position that the removal statute allows for removal by only a federal defendant.

### IV. Federal Question Jurisdiction

The IRS additionally contends that this court has federal question jurisdiction over this action:

> "The United States believes that the ABC action is removable due to the stay of creditor action associated with the ABC action and due to the potential for there to be a determination regarding the priority of the liens that the United States holds against the assignor, Dino Rotondo."

(Dkt. # 6, Pg. ID 83-84.) Likewise, Creditor Akouri notes that this action will ultimately determine the priority of the IRS's tax lien on Rotondo's assets and that the "relative priority of a United States lien for unpaid taxes is a federal question." (Dkt. # 42, Pg. ID 770) (citing *United States v. Acri*, 348 U.S. 211, 213 (1955)); *see also Blachy v. Butcher*, 221 F.3d 896, 905 (6th Cir. 2000) (holding that "[t]he priority of the federal tax lien against competing claims is governed by federal law"). Because the court concludes that jurisdiction lies pursuant to 28 U.S.C. § 1442(a)(1), it need not address this alternative basis for jurisdiction at this time, but notes the persuasive force of the Creditors' position. For the reasons stated above,

IT IS ORDERED that Assignor Rotondo's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. # 41) is DENIED.

                                            s/Robert H. Cleland            /
                                              ROBERT H. CLELAND
                                              UNITED STATES DISTRICT JUDGE

Dated:  August 7, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 7, 2018, by electronic and/or ordinary mail.

                                            s/Lisa Wagner                /
                                            Case Manager and Deputy Clerk
                                            (810) 292-6522

s/Cleland/C2Orders/16-13324.Rotondo.DenyDismiss.aju